GULOTTA, Judge.
This is an appeal by plaintiff directed solely at the inadequacy of an award for injuries received when he was struck by a farm tractor on December 12, 1968 in St. Charles Parish.
There is no question of liability. Also no question arises on the medical expenses. The total judgment is in the sum of $14,689.88, which included $3,500.00 for plaintiff’s post-accident mental condition; $4,800.00 loss of income; and $4,200.00 for physical injuries. The appeal is limited to the question of the inadequacy of these awards.
The primary thrust of plaintiff’s argument is that the trial judge erroneously *424 concluded that the post-accident mental depression ceased to be causally connected to the accident subsequent to September, 1970, because of the discovery, at that time, of a vasular condition (in this case, arteriosclerosis and hypertension) from which mental changes suffered by plaintiff were attributable. A further complaint is that the trial judge erred in failing to recognize that plaintiff’s continued inability to return to work and loss of income (after September, 1970) was attributable to a vascular condition and not the result of the accident.
We reject plaintiff’s contentions and, accordingly, affirm. The trial judge in written reasons stated:
“This court does not doubt that comparatively soon after the accident plaintiff underwent a mental change which directly related back thereto. The evidence well bears this out. But in view of the subsequent discovery of hypertension and unfavorable vascular changes it becomes difficult, if not impossible, to approximate when the plaintiff’s mental change soon after the accident became confused with related symptoms brought about by high blood pressure and abnormal vascular changes. However, it seems reasonable at least to consider that plaintiff’s personality change related back to the accident up to September 1970 when it became known that plaintiff had hypertension and arteriosclerosis. The medical evidence does not justify this court’s projecting the accident as the cause of plaintiff’s mental status beyond that time.”
The evidence, substantially medical, supports these well-reasoned conclusions.

Physical Injuries

Immediately after the accident, Dinvaut, who was 56 years of age at that time, was taken to St. Joseph’s Hospital at Thibodaux, Louisiana, where he remained for a period of eight days. He was seen by Dr. Roland Waguespack who found four rib factures of the left side, lacerations of the lip and cheek, multiple abrasions and a cardiac contusion. Subsequently, while in the hospital, plaintiff developed an accumulation of blood in the pleural cavity. He was treated with analgesics, and his chest was strapped to relieve pain. During hospitalization, plaintiff complained of pain in his shoulder and elbow; however, no fractures were discerned. Physical therapy was recommended, and treatment substantially consisted of muscle relaxants, pain medication, and the recommended physio-therapy. Treatment continued by Dr. Waguespack for the physical injuries until July, 1969. An award in the sum of $4,200.00, we believe, under the circumstances, is reasonable. Adams v. Allstate Insurance Co., 212 So.2d 204 (La.App. 4th Cir. 1968); Smith v. American Casualty Co. of Reading, Pa., 236 So.2d 240 (La.App. 3rd Cir. 1970).

Post-Accidental Mental Condition

In connection with the plaintiff’s depressive reaction, Dr. Waguespack testified that about six weeks after the injuries he noticed that Dinvaut had some “rather striking” personality changes. He described the plaintiff as being listless, apathetic and less aware of his surroundings. It was Dr. Waguespack’s opinion that subsequent to his discharge from the hospital, plaintiff was suffering from a progressive deepening of a traumatic neurosis suffered as a result of the accident. It was his opinion further that the neurosis existed at the time of plaintiff’s discharge in July of 1969. In November of 1970, because of continued complaints of headaches, plaintiff was again seen by Dr. Waguespack. Examination revealed hypertension and ar-teriosclerotic changes at that time.
Dinvaut was seen by Dr. William Fer-rante in May, 1969. His findings were that plaintiff was suffering from arteriosclerosis and high blood pressure at that time. The plaintiff was referred to Dr. *425 Herman Colomb in July, 1969 and later to Dr. Max Johnson, a Neurologist and Psychiatrist. Dr. Johnson saw plaintiff on June 23, 1970. At that time, he found depression and lethargy. He related spells of crying, apathy and depression to the date of the accident. It was his opinion that plaintiff’s mental condition limited his ability to perform his occupation. In the fall of 1970, examination by Dr. Johnson revealed hypertension and arteriosclerosis. It was his further opinion that at that time it became difficult to ascertain whether plaintiff’s depressive mental condition continued to be attributable to the accident or attributable to the vascular changes (arteriosclerosis and hypertension).
Plaintiff, his wife, and an adult son describe significant personality changes in the plaintiff which occurred shortly after the accident. Mrs. Dinvaut testified that plaintiff “ * * * had a tendency to cry all the time” after the accident. She also stated that her husband became apathetic and lethargic to such an extent that he was incapable of performing any work.
When we consider the medical and lay testimony, we are convinced that the trial judge properly concluded that the post-accident mental condition suffered by the plaintiff was accident connected and related back to the accident until the fall of 1970 when it became apparent that plaintiff was suffering from hypertension and arteriosclerosis. As stated by the trial judge,
“ * * * The medical evidence does not justify this court’s projecting the accident as the cause of plaintiff’s mental status beyond that time.”
We cannot find, therefore, that the amount of the award for the post-accident mental condition is inadequate.[1]
Because we fail to find error in the court’s determination of the extent and duration of plaintiff’s mental condition, we find no error in the amount of the award for loss of earnings. In this connection, the trial judge awarded the sum of $4,800.-00 for losses incurred by plaintiff in 1969. Dinvaut’s income tax return did not show any loss in 1970.' Plaintiff’s earning loss was computed by averaging his income derived from his work for the years 1966, 1967, and 1968.[2] This amounted to $5,500.-00 annually. The trial judge then subtracted the reported income of plaintiff for 1969 ($686.00) and deducted this amount from $5,500.00 arriving at a $4,800.00 award for losses incurred in 1969. We find this method of computation reasonable under the circumstances of this case. Finding no error, we affirm.
Affirmed.

. Wiggins v. Kansas City Southern Railway Company, 240 So.2d 744 (La.App.2nd Cir. 1970).

. Income for the stated years was as follows:
1966 — $ 4,995.24
1967— 5,068.85
1968— 6,440.11
3-year total' — $16,504.20