DIXON, Justice.
In this suit for personal injuries application was made by plaintiff to review an award for damages, claimed to be inadequate.
The particular subject of the application is the award of $3,500.00 for the “post-accident mental condition” of the plaintiff; the total award by the trial judge was $14,689.88, plus interest and costs. Defendants do not argue that the mental condition of the plaintiff was not real, actual, disabling and, initially, caused by the accident; rather, defendants contend that the *295 conclusion of the trial court, affirmed by the Court of Appeal (Dinvaut v. Phoenix of Hartford Ins. Co., 288 So.2d 423) that the accident was the cause of the plaintiff’s mental depression until September, 1970, and that hypertension and arteriosclerosis caused the mental depression thereafter, was a factual conclusion supported by the evidence.
An examination of the evidence discloses no reasonable basis for this conclusion of the courts below.
The question in this case presents the close relationship between the admonition of C.C. 1934 to accord “much discretion” to the trier of fact in assessing damages on the one hand (see Fox v. State Farm Mutual Automobile Ins. Co., La., 288 So.2d 42), and, on the other hand, the appropriate function of appellate courts in Louisiana is the review of factual determinations of the trial courts. (La.Const.1921, Art. 7, §§ 10, 29; La.Const. 1974, Art. 7, § 10; see Canter v. Koehring Co., 283 So.2d 716 (La.1973)).
Plaintiff was a cane hauler. He owned and operated a fleet of trucks; he also obtained revenue from some music boxes. On December 12, 1968, when plaintiff was fifty-six years old, he was crushed between two trucks, suffering lacerations, four rib fractures, a heart injury and damage to his left shoulder, arm and hand. He was hospitalized for eight days under the care of Dr. Waguespack, a general practitioner, who referred him to an orthopedist in March or April, 1969. While undergoing physiotherapy and medication in May of 1969, plaintiff went to physicians at Ochsner where he had received treatment prior to the accident. Three to six weeks after the accident Dr. Waguespack observed a striking personality change in plaintiff. After seeing the internist at Ochsner, plaintiff was referred to a psychiatrist, Dr. Colomb. In June of 1970 Dr. Colomb consulted his partner, Dr. Johnson, because plaintiff had failed to respond to treatment, causing Dr. Colomb to consider shock treatments. Plaintiff remained under the care of Dr. Johnson until the date of the trial; plaintiff was unable to work even at the time of the trial in February, 1972 because of his mental condition.
Among the numerous ailments suffered by the plaintiff were hypertension and arteriosclerosis, for which plaintiff was treated by Dr. Johnson and Dr. Wagues-pack. Both hypertension and arteriosclerosis were noted by Dr. Ferrante in May of 1969.
These vascular ailments, Dr. Johnson testified, made treatment for the mental condition more difficult, and might even have contributed to the symptoms, such as loss of memory. However, Dr. Johnson also testified that plaintiff would not have experienced the mental depression, in his opinion, in the absence of the physical disability resulting from the accident. There was no evidence that the mental condition of the plaintiff ever improved to a point at which he could return to productive labor.
The trial judge, apparently overlooking the uncontradicted evidence of vascular disease in May of 1969, adopted September, 1970 (when Dr. Johnson reported hypertension and arteriosclerosis) as a date dividing the accident-caused depression from the disease-caused depression, saying the evidence did not justify his “projecting the accident as the cause of plaintiff’s mental status beyond that time.”
The date of the onset of the hypertension and arteriosclerosis cannot be determined from the evidence. Dr. Ferrante, in May of 1969, found elevated diastolic blood pressure, changes in the eye-grounds, and changes in the electroencephalogram compatible with arteriosclerosis and hypertension. Two weeks after his first examination, Dr. Ferrante found the blood pressure to be within a normal range, but testified that “there have been fluctuations over the past year since he has seen Dr. Burns” (the urologist). Dr. Ferrante gave an affirmative answer when asked, “Prior to your seeing him in May of 1969 there had been some evidence of rises or erratic blood pressure elevations?” The source of this information does not appear. *296 Plaintiff’s renal condition, said Dr. Fer-rante is one commonly related to high blood pressure.
Dr. Waguespack had treated plaintiff before the accident for a urinary tract infection and other illnesses, but had nothing in his records to evidence hypertension.
The only evidence directly bearing on the causal relationship of the accident and the vascular disease to the mental condition was the testimony of Dr. Johnson. He knew of nothing that would have caused plaintiff’s depression except the accident and the injuries. We find no evidence which “furnishes a reasonable factual basis for the trial court’s finding” (Canter v. Koehring Co., 283 So.2d 716, 724) that plaintiff’s depression, since September, 1970 was caused, not by the accident, but by the vascular disease. Because of this erroneous factual determination, on which the award for damages was based, the “much discretion” rule of C.C. 1934 has no application.
There was, however, an abuse of discretion by the trial court, approved by the Court of Appeal, in fixing the award for loss of earnings before the September, 1970 date, after which the cause of plaintiff’s disability was said to have shifted from accident to illness. The uncontra-dicted evidence was that plaintiff was unable to perform any useful work after the accident. He contributed nothing to the operation of his business except to run an occasional errand. His son and his wife, who had assisted in the business before the accident, took over the operation entirely. Plaintiff could no longer solicit work, make contracts, hire drivers, supervise the operations, keep records, or maintain the fleet of trucks, all of which he did before the accident. Because of plaintiff’s inability to perform the mechanical maintenance of the equipment, his wife and son sold part of the fleet.
The trial judge looked only to the income tax returns to compute the loss of earnings. He obtained an average $5,500.-00 a year for years prior to the accident from which he subtracted income reported after the accident. Part of the income after the accident came from the sale of plaintiff’s capital assets. None of the income reported by the community after the accident was earned from plaintiff’s efforts ; it was all derived from the additional efforts of plaintiff’s wife and son. It was an abuse of discretion for the trial judge to compute damages for the loss of earnings in this manner.
The duration of plaintiff’s disability is not certain. Dr. Johnson was of the opinion that termination of the litigation would help plaintiff recover his health, but that his condition was now complicated by the vascular ailments. Plaintiff’s life expectancy at the time of the accident was about twenty years, but this figure includes no factor relating to renal ailments not related to the accident.
The award by the trial judge of $2,189.88 for special damages is not at issue. The $4,200.00 award for plaintiff’s physical injuries is within the sound discretion of the trial judge. The awards for loss of earnings and for “post-accident mental condition” will be increased.
Considering plaintiff’s age, the condition of his health prior to the accident, the possibility of improvement upon termination of the litigation, his past and future loss of earnings, the award for disability and loss of earnings will be increased to $60,000.00, or a total of $66,389.88.
The judgment is therefore amended and affirmed, and as amended, there is now judgment in favor of plaintiff, Rupert J. Dinvaut, and against the defendants, The Phoenix of Hartford Insurance Company, Walter Baker, Hilda T. Lanaux, Marie Louise Lanaux, Martha L. Gele, Pierre B. Lanaux, A. Dennis Lanaux, Hilaire D. Lanaux and Louis A. Lanaux, in solido, in the sum of $66,389.88, with legal interest from date of demand, and all costs.
*297 MARCUS, J., dissents and assigns reasons.